# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD SCOTT, | 1:08-CV-01929 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES HARTLEY, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by jury trial of second degree murder in violation of Cal. Penal Code § 187, with enhancements for firearm use and a prior serious felony. See Respondent's Answer to Petition ("Answer"), Exhibit 1. On January 12, 1987, Petitioner was sentenced to serve an indeterminate term of twenty-two years to life in state prison with the possibility of parole, to run concurrently with his 1984 conviction for armed robbery. See Answer, Exhibits 1, 2.

On February 8, 2007, a parole suitability hearing was held before the California Board of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. See Answer, Exhibit 3 at p. 23. Petitioner attended the hearing and was represented by his attorney. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for one year. Id. at 115.

On June 5, 2007, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court challenging the Board's decision. Id. On July 18, 2007, the petition was denied in a reasoned decision. See Answer, Exhibit 4. On August 10, 2007, Petitioner filed a habeas petition in the California Supreme Court. See Answer, Exhibit 5. The petition was summarily denied on January 30, 2008. See Answer, Exhibit 6.

On December 8, 2008, Petitioner filed the instant petition for writ of habeas corpus in the United States District Court for the Central District of California. The petition was transferred to this Court on December 17, 2008. The petition challenges the 2007 decision of the Board denying parole. Petitioner contends the denial of parole violates his due process rights, because the decision was not supported by some evidence. On March 16, 2009, Respondent filed an answer to the petition. Petitioner did not file a traverse.

## FACTUAL BACKGROUND[1]

Petitioner and the victim knew each other and were friends. The victim also sold drugs for Petitioner on a part-time basis. On January 13, 1986, Petitioner and the victim had begun arguing near the location of the victim's residence at 97th West 253rd Street, Harbor City, California. Petitioner was angry because the victim had been using the drugs instead of selling it. Witnesses indicated that the victim pulled a three-inch blade knife on Petitioner. Petitioner then obtained a .25-caliber handgun and fired four shots in the air. The victim ran to a staircase leading to his residence approximately five feet away, went to the top and stood there. Petitioner approached the victim, stood at the bottom of the stairs and yelled at him. Petitioner then aimed the gun at the victim. The victim turned so that his right side was facing Petitioner. Petitioner then held the gun to the victim's head for approximately 15 to 30 seconds and then fired one shot

---

[1] The information is derived from the factual summary as set forth in the parole hearing proceedings. See Answer, Exhibit 3 at 34-40.

striking the victim in the head. The victim died on January 17, 1986, as a direct result of a gunshot wound to the head.

## DISCUSSION

I.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

4

Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this case, because the California Supreme Court summarily denied the habeas petition, this Court must "look through" that decision and presume it adopted the reasoning of the Los Angeles County Superior Court, which was the last state court to issue a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

As to these procedural protections, Petitioner was provided with all that is required. He was given advanced written notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard, representation by an attorney, and a written decision explaining the reasons parole was denied.

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454

(1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

Further, the California Supreme Court more recently stated:

> "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th 1181, 1221 (2008). The nature of the commitment offense "does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." Id. at 1214.

In denying parole in this case, the Board based its decision on the following factors: 1) The nature and gravity of the commitment offense; 2) A previous record of violence; 3) An unstable social history; and 4) A record of misconduct while incarcerated. See Answer, Exhibit 1 at 115-123.

The Board relied heavily on the facts of the commitment offense in determining that the

offense was especially heinous.[2] The Board first noted that the offense was carried out in a very dispassionate and calculated manner. 15 Cal. Code Regs. § 2402(c)(1)(B). The Board noted that Petitioner armed himself and pursued the victim after the victim no longer posed a threat to him. When he caught up to the victim, Petitioner aimed his gun at the victim's head. The victim did nothing at this point but stand at the top of a staircase. Petitioner paused for approximately 15 to 30 seconds while leveling his firearm at the victim's head and then fired a single shot killing the victim. In light of the facts, the state court's conclusion that some evidence supported the Board's finding that the offense was carried out in a very dispassionate manner was not unreasonable.

The Board also found that Petitioner's motive was very trivial. 15 Cal. Code Regs. § 2402(c)(1)(E). Petitioner and the victim were friends. The victim also worked for Petitioner selling drugs part-time. Petitioner was angry because the victim had apparently consumed some of the drugs he was supposed to sell. For fear of losing face, Petitioner killed the victim. Again, the state court's determination that the Board's finding was supported by some evidence was not unreasonable.

The Board next noted that Petitioner had a previous record of violence. 15 Cal. Code Regs. §§ 2402(c)(2). In support of this finding, the Board noted that Petitioner had committed an armed robbery of a jewelry store in 1984. In addition, Petitioner had previously been arrested for vandalism, burglary, petty theft, and sale and transport of drugs. He was on probation at the time of the offense. Therefore, there is some evidence supporting this factor.

The Board also determined that Petitioner had an unstable and tumultuous social history. 15 Cal. Code Regs. § 2402(c)(3). The Board noted that Petitioner dropped out of the eleventh

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

grade and began selling illegal drugs. The Board further noted that Petitioner's mother was in prison for attempted robbery when Petitioner was young, and Petitioner was raised by his grandmother.

Finally, the Board found that Petitioner had engaged in misconduct while in prison. 15 Cal. Code Regs. § 2402(c)(6). The Board stated that Petitioner had received eight "CDC 115" serious rules violations, with the most recent being in 1996 for delaying lockup. Given this fact, the state court determination that some evidence supported the Board's finding was not unreasonable.

The Board also considered the positive factors favoring parole release pursuant to §§ 2402(d)(3),(8), and (9). The Board noted that Petitioner had shown sincere signs of remorse, accepted the record, and made no excuses for his actions. A psychological evaluation found Petitioner's risk of harm to others to be below average for the parolee population and equal to the risk of an average citizen. The Board also commended Petitioner for programming well and achieving several vocations.  The Board also found that Petitioner's parole plans were solid and promising. Petitioner also had acceptable employment plans and marketable skills. Nevertheless, the Board found the negative factors continued to demonstrate that Petitioner remained an unreasonable risk of danger to the public despite his positive gains. The state court finding that some evidence supported this determination was not unreasonable.

The Court further finds that the Board's reliance on the unchanging circumstances of the underlying offense does not violate Petitioner's due process rights. In <u>Biggs v. Terhune</u>, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." As discussed above, however, the circumstances of the offense, while significant, were not the only reasons for the Board's decision. The Board found Petitioner's history of violence and unstable relationships as well as his conduct in prison to be highly relevant in concluding Petitioner would pose an unreasonable danger to public safety should he be presently released. Moreover, the concerns raised in <u>Biggs</u> are not present in this case.

Petitioner was sentenced to a minimum term of 22 years, and he began his life term on August 27, 1990. See Answer, Exhibit 1 at 25. At the time of the 2007 parole hearing, he had not yet served the minimum term of his sentence.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 12, 2009**             /s/ Sandra M. Snyder
                                          UNITED STATES MAGISTRATE JUDGE